UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF PUERTO RICO

OMAR VALLE COLON,

     Plaintiff,

         v.                           CIV. NO. 09-02217(PG)

MUNICIPALITY OF MARICAO, ET AL.

     Defendants.

---

### OPINION AND ORDER

Plaintiff Omar Valle-Colon ("Valle" or "Plaintiff") brought this action pursuant to 42 U.S.C. 1983 ("Section 1983") for violations of his civil rights as guaranteed by the Fourth, Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution. Before the Court stand several motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(d) brought by co-defendants Gilberto Perez-Valentin, David Ortiz-Rodriguez, Luis D. Vargas-Caraballo, and the Municipality of Maricao (collectively, "Defendants")(Docket No.'s 8, 9, 20, and 27). For the reasons set forth below, Defendants' motions are **GRANTED IN PART AND DENIED IN PART.**

## I. Background

**A. Procedural Background**

Valle filed the instant suit against Defendants on December 7, 2009 (Docket No. 1). Said complaint was amended on June 21, 2010 (Docket No. 17). Plaintiff seeks redress for the injuries that he alleges were suffered at the hands of police officers Luis Vargas, Abner Ruiz, John Doe 3, and John Doe 4 as guaranteed by the Fourth and Fourteenth Amendments, which resulted from their use of excessive force and/or their

failure to intervene to prevent the use of excessive force by a fellow officer (Docket No. 17). Valle also seeks redress against Gilberto Perez-Valentin, John Doe 1, David Ortiz-Rodriguez, and John Doe 2 due to their failure to establish policies to review the use of deadly force by police officers (Docket No. 17). Valle's complaint also asserts a violation of the Fifth and Thirteenth Amendments to the United States Constitution, but does not explain his argument any further. Lastly, Valle posits that Defendants' acts constitute a reckless disregard for the safety of citizens and negligence in the performance of their duties in violation of Article II, Sections 1, 7, and 10 of the Constitution of the Commonwealth of Puerto Rico, P.R. LAWS ANN. tit. 1, Art. II, § 1, § 7, and § 10, as well as Article 1802 and 1803 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, § 5141 and § 5142.

Defendants have filed several motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(d) (Docket No. 8, 9, 20, and 27) that presently stand before this Court. Plaintiff also filed a response in opposition to Defendants' most recent motion to dismiss (Docket No. 32).

**B. Factual Background**

The Court draws the following facts from Plaintiff's complaint and takes them as true for purposes of resolving Defendants' motion to dismiss.

On January 9, 2009, the incoming mayor of Maricao, co-defendant Gilberto Perez-Valentin was sworn into office. A festivity was held in the Maricao Coliseum in celebration of Mr. Perez-Valentin's election. Valle attended the event and left shortly after midnight on January 10, 2009, in his automobile. As Valle was driving around Maricao, he saw his cousins, Jose Daniel Velez-Rosado and Emmanuel Cruz-Rodriguez, who asked Plaintiff for a ride. Valle proceeded to Las Colinas public housing project ("Las Colinas") with the purpose of dropping off his cousins. As Valle drove into Las Colinas, a municipal police vehicle driven by municipal officer Luis D. Vargas-Caraballo, and/or municipal officer Abner Ruiz del Toro, and/or John Doe 1, and/or John Doe 2 approached the entrance to Las Colinas at a fast speed from the opposite direction. Valle reversed his vehicle upon seeing the oncoming vehicle because he

feared that something was amiss. As Valle shifted his vehicle from reverse to drive in order to drive forward, Mr. Vargas-Caraballo, and/or Mr. Ruiz del Toro, and/or John Doe 3, and/or John Doe 4 exited the municipal vehicle. Plaintiff alleges that at this point Mr. Ruiz del Toro or Mr. Vargas-Caraballo then shot Valle from just outside his window hitting him in the left side of his chest. Valle then drove to his brother's house, who drove him to the hospital in Lares, Puerto Rico.

Valle received emergency medical treatment at the Lares hospital and was transferred to the Puerto Rico Medical Center ("PRMC") in Rio Piedras, Puerto Rico via ambulance. At the PRMC, a catheter was inserted into Valle's left lung in order to repair the damage caused by the bullet wound. Valle was subsequently transferred to the intensive care unit, where he was hospitalized for five days. After being released from the hospital, Valle returned home where convalesced for approximately a month and a half.

On January 28, 2009, the Puerto Rico Police Homicide Division of Mayaguez filed criminal charges against Valle for attempted murder. These charges were dismissed during a preliminary hearing on February 17, 2009. The District Attorney's Office moved for a second preliminary hearing on appeal, but the District Attorney dismissed his request on March 26, 2009. Valle alleges that he incurred $2,000.00 in attorney's fees as a result of the frivolous charges brought against him.

Defendants have filed several motions to dismiss in which they aver that: (1) municipal liability is inapplicable in the instant case; (2) Defendants are protected from liability under the doctrine of qualified immunity; (3) Valle has failed to establish a claim under the Fourth Amendment; (4) Valle has failed to establish a claim under the Fifth Amendment; (5) Valle has failed to establish a claim under the Thirteenth Amendment; (6) Valle has failed to establish a claim under the Fourteenth Amendment; (7) Valle has failed to establish personal liability against Mr. Perez-Valentin, Mr. Ortiz-Rodriguez or Mr. Vargas-Caraballo; (8) all supplemental state-law claims should be dismissed; and (9) Valle waived his right to bring a Section 1983 claim against Defendants.

For the reasons that will be explained below the Court agrees in part and disagrees in part with Defendants' motions.

## II. Standard of Review

## A. Rule 12(b)(6)

When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

"Yet [the Court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009)). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has . . . held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact) . . . ." Twombly, 550
U.S. at 555 (internal citations and quotation marks omitted). In other
words, while the Rule 8 pleading standard does not require, detailed
factual allegations, it "demands more than an unadorned, the
defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.
"Determining whether a complaint states a plausible claim for relief
will . . . be a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense." Id. at
1950.

**B.     Standard for 12(d)**

        Federal Rule of Civil Procedure 12(d) states: "If, on a motion
under Rule 12(b)(6) or 12(c), matters outside the pleadings are
presented to and not excluded by the court, the motion must be treated
as one for summary judgment under Rule 56." The First Circuit has held
that at the discretion of the district court, "a motion to dismiss may
be converted to a motion for summary judgment if the court chooses to
consider materials outside the pleading in making its ruling.
Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321
(1st Cir. 2008) (citing Fed.R.Civ.P. 12(d) and Garita Hotel Ltd.
P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992)).
More specifically, the First Circuit has found that "the proper
approach to Rule 12(b)(6) conversion is functional rather than
mechanical. A motion to dismiss is not automatically transformed into
a motion for summary judgment simply because matters outside the
pleadings are filed with, and not expressly rejected by, the district
court. "If the district court chooses to ignore the supplementary
materials and determines the motion under the Rule 12(b)(6) standard,
no conversion occurs." Garita Hotel, 958 F.2d at. 18. Thus, the test
is not whether supplementary materials were filed, but whether the
court took cognizance of them. Id.
        However, as Defendants correctly point out, in reviewing a Rule
12(b)(6) motion the Court may consider "documents the authenticity of
which are not disputed by the parties; . . . documents central to
plaintiffs' claim; [and] documents sufficiently referred to in the
complaint." Curran v. Cousins, 509 F.3d 36, 44 (1s Cir. 2007)(citing

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). In the instant
case, there is no dispute over the authenticity of the exhibits. Nor
is there a dispute over the exhibits being part of the public record.
Moreover, the Court finds that Defendants' exhibits are sufficiently
referred to in Valle's complaint. Thus, the Court finds no need to
consider Defendants' most recent motion to dismiss (Docket No. 27) as
one for summary judgment despite its inclusion of additional exhibits.

## III. Discussion

### A. Municipal Liability

A claim against a municipal official in his official capacity is
treated as a claim against the entity itself. Negron-Almeda v.
Santiago, 579 F.3d 45, 53 (1st Cir. 2009) (citing Kentucky v. Graham,
473 U.S. 159, 165 (1985)). In the instant case, Valle has advanced
claims against Defendants in their official capacities, thereby
advancing claims against the Municipality of Maricao.

In order to make out a claim of municipal liability under § 1983,
a plaintiff "must show that the execution of a government's policy or
custom, whether made by lawmakers or by those whose edicts or acts may
fairly be said to represent official policy, inflicts the injury."
Murray v. City of Boston, No. 96-1848,  1996 U.S. App. LEXIS 33161 at
* 3 (1st Cir.  Dec. 17, 1996) (citing Monell v. New York Dep't of
Social Servs., 436 U.S. 658, 694 (1978)). "The custom on which
liability is premised must be so permanent and well settled as to
constitute a custom or usage with the force of law." Id.  The First
Circuit has held that there are two requirements that plaintiffs must
meet in maintaining a § 1983 action grounded upon an unconstitutional
municipal custom:

> First, the custom or practice must be attributable to the
> municipality. . . .It must be so well-settled and widespread that
> the policymaking officials of the municipality can be said to
> have either actual or constructive knowledge of it yet did
> nothing to end the practice. Second, the custom must have been

the cause of and the moving force behind the deprivation of
constitutional rights.

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)(citations
omitted), *cert. denied*, 493 U.S. 820 (1989).

As Defendants correctly point out, the theory of *respondeat
superior* has no place in municipal liability claims. Murray, 1996 U.S.
App. LEXIS 33161 at * 3 (citing Monell, 436 U.S. at 691). A plaintiff
may establish the existence of an official policy by showing that the
alleged constitutional injury was caused by a person with final
policymaking authority. Walden v. City of Providence, 596 F.3d 38, 40
(1st Cir. 2010)(citing Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir.
2008)) (citations omitted). Whether or not an official is a final
policy maker is a question of law for the trial judge to decide and is
a matter of state law. Id. (citing Jett v. Dallas Indep. Sch. Dist.,
491 U.S. 701, 737 (1989). "This determination requires a showing that
"a deliberate choice to follow a course of action [was] made from
among various alternatives by the official or officials responsible
for establishing final policy with respect to the subject matter in
question." Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469,
106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (plurality opinion)).

Defendants argue that Valle's claim is void because the complaint
fails to mention that the alleged violation was the result of existing
municipal policy. However, "[i]t is well established that the
deliberate acts or omissions of a municipal policymaker with final
authority over the subject matter in question may expose the
municipality itself to liability." Rodriguez-Garcia v. Municipality
of Caguas, 495 F.3d 1, 13 (1st Cir. 2007). Defendants' contention
simply misses the point, as an omission by a municipal policymaker
with final authority is sufficient to expose the municipality to
liability. Under Puerto Rico law, the "highest authority in the
direction of the Municipal Police shall be vested in the mayor, but
the immediate direction and supervision of the Corps shall be under
the Charge of a Commissioner, who shall be appointed by the mayor..."
P.R. Laws Ann. tit. 21, ch. 97 § 1061 et seq. (2004). At this juncture,
the Court lacks copies of existing municipal ordinances or the
municipal charter that may assist in determining who had the final

policy making authority over the internal policies of the Maricao
Municipal Police.  However, it is clear to the Court that the final
policy making authority probably lies with either the mayor of Maricao
or the Municipal Police Commissioner. It is not entirely clear at this
juncture whether Mr. Perez-Valentin or Mr. Ortiz-Rodriguez were aware
of this policy, however the Court concludes that this is a matter that
is better addressed at a later juncture in the proceedings.

        As a result of the foregoing, the Court **DENIES** Defendants' motion
to dismiss as to the lack of municipal liability.


## B. Qualified Immunity

        Defendants state that they are entitled to qualified immunity
because Valle failed to address in which manner the officers involved
violated a law, ordinance, policy, or the Constitution of the United
States. The doctrine of qualified immunity protects government
officials from liability from civil damages. Gomez v. Toledo, 446 U.S.
635 (1980). Defendants suggest in their motion that any claims against
the Municipality of Maricao or the other Defendants in their personal
capacities are barred by the qualified immunity doctrine. However,
unlike individual defendants, municipalities are not entitled to
qualified immunity. Walden, 596 F.3d at 39 n. 23 (citing Owen v. City
of Independence, 445 U.S. 622, 638 (1980)). Thus, a claim of qualified
immunity does not protect a municipality from liability. Furthermore,
the Court finds that in the instant case the individual Defendants
also lack a valid qualified immunity defense.

        "In assessing a defense of qualified immunity, a court may choose
to first determine whether the plaintiff has alleged a deprivation of
an actual constitutional right at all." Haley v. City of Boston, 677
F.Supp.2d 379, 386 (D. Mass 2009)(citing Conn v. Gabbert, 526 U.S.
286, 290 (1999)). Moreover, the doctrine of qualified immunity
protects government officials "from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would
have known." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526
(1st Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982)). The qualified immunity test takes the form of a two-part

inquiry: (1) the Court must decide whether the facts a plaintiff has shown make out a violation of a constitutional right, and (2) if the plaintiff has satisfied the first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct. See id.

The First Circuit recently explained that:

> [t]he clearly established step [of the qualified immunity analysis] is itself composed of two parts, which require the court to decide (1) whether the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right, and (2) whether in the specific context of the case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.

Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Maldonado, 568 F.3d at 269 (internal quotation marks omitted)).[1] "The first part addresses the status of the law at the time of the event in question, focusing on the clarity of the standard with respect to the asserted constitutional right." Id. "The second part addresses the specific factual context of the case to determine whether a reasonable official in the defendant's place would have understood that his conduct violated the asserted constitutional right." Id.

In conducting our qualified immunity analysis, we take the Plaintiff's facts as true for purposes of determining whether Defendants have violated his constitutional rights and whether the right at issue was clearly established at the time of the Defendant's alleged misconduct. Plaintiff has pled a plausible excessive force claim and thus a cognizable violation of his constitutional right to

---

[1] The First Circuit in Mosher noted that the recent Supreme Court decision in Pearson v. Callahan, 129 S. Ct. 808, 818-819 (2009), gave courts discretion in addressing the "clearly established" step without first determining whether a constitutional right had been violated. In this case, we do not exercise this discretion given that the facts, when taken as true, make out a clear violation of Plaintiff's right to be free from excessive force during a seizure. However, we aim to follow First Circuit precedent and keep abreast of the appellate court's recent decisions. Therefore, we extend our qualified immunity analysis under the second prong pursuant to the First Circuit's opinion in Mosher.

be free from unreasonable seizures under the Fourth Amendment, thus
satisfying the first prong of the immunity inquiry.

Under the second prong, first "[w]e consider whether existing
case law was clearly established so as to give the defendants fair
warning that their conduct violated the plaintiff's constitutional
rights." Guillemard-Ginorio, 585 F.3d at 527 (internal citations and
quotation marks omitted). The law is considered clearly established
either if courts have previously ruled that materially similar conduct
was unconstitutional, or if a general constitutional rule already
identified in the decisional law applies with obvious clarity to the
specific conduct at issue. Id. (internal citations and quotation marks
omitted). "There is no question that the shooting of an unarmed and
harmless civilian by police officers without provocation or reason, if
proved, constitutes a constitutional violation." Martinez-Rivera v.
Sanchez Ramos, 498 F.3d 3, 7 (D.P.R. 2007) (internal quotations
omitted). The Court finds that the caselaw preventing police officers
from indiscriminately opening fire on non-threatening individuals,
whether or not they are exhibiting probable cause for detention, is
clearly established. In the instant case, Defendants were given fair
warning that their course of action was in violation of Valle's
constitutional rights.

In Jennings v. Jones, the First Circuit observed that the
defendant officer's conduct was "such an obvious violation of the
Fourth Amendment's general prohibition on unreasonable force that a
reasonable officer would not have required prior case law on point to
be on notice that his conduct was unlawful." 499 F.3d 2, 17 (1st Cir.
2007). If there is any doubt about whether the case law is directly on
point with the factual scenario presented in the case at bar, the same
observation applies because the unlawfulness of the conduct is readily
apparent even without clarifying case law. See id. (citing numerous
appellate decisions denying a qualified immunity defense without
identifying a closely analogous case when the use of force is so
plainly excessive or obvious); see also Mosher, 589 F.3d at 493
("Clearly established law does not depend on identical circumstances
repeating themselves. Instead, notable factual differences may exist
between prior cases and the circumstances at hand as long as the state

of the law at the time gave the defendant 'fair warning' that his action or inaction was unconstitutional.").

Taking into account Valle's factual allegations and drawing all reasonable inferences in his favor, the Court concludes that he has stated facts that paint a clear picture of abuse by police officers. A reasonable police officer would not open fire on a harmless civilian without provocation or reason.

Defendants are not entitled to qualified immunity from liability at this point in the litigation. However, they are free to raise this defense again after the factual record is more fully developed. Then, we will be better able to discern the individual officers' participation in employing excessive force against Plaintiff and whether or not they each acted reasonably in the specific factual context of this case.

Thus, the Court **DENIES** Defendants' qualified immunity claim.

## C. Liability under the Fourth Amendment

"To establish a Fourth Amendment excessive force claim, a plaintiff must show that the defendant employed force that was unreasonable under all the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009). "The Supreme Court has furnished a non-exclusive list of criteria for determining the objective reasonableness of a police officer's use of force. These criteria include the severity of the crime at issue, the extent (if any) to which the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Graham v. Connor, 490 U.S. 386, 396 (1989)) (internal citations omitted).

Defendants assert that Valle's Fourth Amendment claim should be dismissed because Valle has failed to advance allegations as to the officers' conduct, the circumstances of the shooting, and the circumstances that led to Valle being charged with attempted murder.

When the facts in this case are examined in the light most favorable to the plaintiff, these criteria sharply favor Valle. If a crime was committed at all, there is no indication that the crime was severe. Although Valle was charged with attempted murder, the charges against him were promptly dismissed. Furthermore, there is nothing in

the record that suggests that Valle presented an immediate threat to the police. There is some indication that Valle could have been attempting to resist arrest by flight. However, at this juncture, the Court simply does not have sufficient information to determine whether Valle was indeed fleeing the scene or fleeing from an arrest.

As a result of the foregoing, the Court **DENIES** Defendants' motion to dismiss Valle's Fourth Amendment claim.

## D. Liability Under the Fifth Amendment

Valle's complaint asserts liability pursuant to the Fifth Amendment of the United States Constitution. Defendants protest that such liability is not applicable because the Fifth Amendment Due Process Clause only applies to actions of the federal government and not those of state or local governments. The Court agrees in that the Due Process Clause of the Fifth Amendment applies only to actions of the federal government and not to state or local governments. Nieves-Hernandez v. P.R. Elec. Power Auth., Civ. No. 04-2209, 2006 U.S. Dist. LEXIS 40266 at * 21 (citing Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447, 449 (1st Cir. 1983)); see Schweiker v. Wilson, 450 U.S. 221, 227 (1981); Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996). Plaintiff does not allege that any of the Defendants are federal actors. Accordingly, the Court finds that Valle's Fifth Amendment claim must be dismissed.

As a result of the foregoing, the Court **GRANTS** Defendants motion to dismiss as to the Fifth Amendment claim.

## E. Liability under the Thirteenth Amendment

Plaintiff has also asserted a claim under the Thirteenth Amendment. The Thirteenth Amendment declares that neither slavery nor involuntary servitude shall exist. U.S. Const. amend. XIII, § 1. "This Amendment was adopted with reference to conditions existing since the foundation of our government, and the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results." Butler v. Perry, 240 U.S. 328, 332 (1916). "In application, courts have consistently found the involuntary servitude standard is not so rigorous as to prohibit all

forms of labor that one person is compelled to perform for the benefit of another." Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 459 (2d Cir. 1996). The Second Circuit has concluded that courts should adopt a contextual approach in examining the challenged labor through a wider constitutional prism. Id. In other words, the Second Circuit held that the context within which a person is obligated to perform some sort of labor should be taken into account in order to determine if it amounts to involuntary servitude in the constitutional sense.

In the instant case, there is no allegation that Valle has been subjected to involuntary labor. Therefore the Court finds no relevant grounds under which Valle's claim may proceed.

As a result of the foregoing, the Court **GRANTS** Defendants motion to dismiss Valle's Thirteenth Amendment claim.

**F. Liability under the Fourteenth Amendment**

Plaintiff further asserts a claim under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment embodies a substantive component that provides protection against "government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986).

The Fourth Amendment protects our citizenry against unlawful searches and seizures, U.S. Const. amend. IV, and prohibits the use of unreasonable force. Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010)(citing  Graham v. Connor, 490 U.S. 386, 388-95 (1989)). Similarly, under the substantiative due process component of the Fourteenth Amendment, use-of-force claims may be actionable if they constitute a deprivation of liberty without the due process of law. U.S. Const. amends. XIV. However, a substantive due process claim that challenges the use of force may only proceed if the Fourth Amendment claim does not apply. Graham, 490 U.S. at 395. In other words, the protection afforded by the Fourth Amendment may preempt the substantive due process protection guaranteed by the Fourteenth Amendment. If the use of force constituted a seizure within the context of the Fourth Amendment, the claim must be analyzed only under the Fourth Amendment reasonableness standard. Id. at 395 n. 10. In contrast, if the plaintiff was not seized, then the Fourth Amendment

would not apply and the use-of-force claim would proceed under the
substantive due process component of the Fourteenth Amendment.

"The seizure of a person occurs when, by means of physical force
or a show of authority, an officer restrains the liberty of a person
and such person submits to the restriction feeling that he or she is
not free to leave." Estate of Bennett v. Wainright, 548 F.3d 155, 167
(1st Cir. 2008) (citing United States v. Holloway, 499 F.3d 114, 117
(1st Cir. 2007)). The First Circuit held that a Fourth Amendment
seizure is one where a police officer via either physical force or a
show of authority restrains the liberty of a citizen in some way.
Holloway, 499 F.3d at 117 (citing U.S. v. Sealey, 30 F.3d 7, 9 (1st
Cir. 1994). Furthermore, the show of authority must be one where a
reasonable person would believe that he was not free to leave. United
States v. Smith, 423 F.3d 25, 28-29 (1st Cir. 2005). "The test is
objective: Would a reasonable person standing in the shoes of the
individual who is approached have felt free to cease interaction with
the officer and depart?" U.S. v. Espinoza, 490 F.3d 41, 49 (1st Cir.
2007) (citing Ornelas v. U.S., 517 U.S. 690, 693 (1996) and Smith, 423
F.3d at 28). "In an excessive force case, the threshold constitutional
question is analyzed under the Fourth Amendment's objective
reasonableness standard." Whitfield v. Melendez-Rivera, 431 F.3d 1, 7
(1st Cir. 2005). Under this standard, if an officer reasonably, but
mistakenly, believed that the suspect was likely to fight back, the
officer would be justified in using more force than what was actually
needed. Id. (citing Saucier v. Katz, 533 U.S. 194, 205(2001))
(citations omitted).

In Whitfield, the First Circuit confirmed that excessive force
claims would be scrutinized under the Fourth Amendment objective
reasonableness standard. The facts in Whitfield involved the police
shooting a suspect as he left the scene of a suspected arson.
Similarly, in the case at hand members of the Maricao Municipal Police
opened fire on Valle as he backed away from an oncoming police vehicle
as he neared the entrance to Las Colinas. The Court concludes that
Valle's claim is a Fourth Amendment claim as he was the subject of a
seizure. Therefore, Valle's Fourteenth Amendment claim is effectively
preempted.

As a result of the foregoing, the Court **GRANTS** Defendants' petition that Valle's Fourteenth Amendment claims be dismissed.

## G. Personal Liability of Mr. Perez-Valentin, Mr. Ortiz Rodriguez, and Mr. Vargas-Caraballo

*1. Liability of Mr. Perez-Valentin.*

"Section 1983 creates a remedy for violations of federal rights committed by persons acting under color of state law." Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41 (2009)(quoting Haywood v. Drown, 129 S. Ct. 2108 (2009))(internal citation omitted). A Section 1983 claim has three essential elements that are needed in order to establish liability: "deprivation of a right, a causal connection between the actor and the deprivation, and state action." Pereira-Castillo, 590 F.3d at 41.

Defendants assert that Valle's complaint contains a number of general, boilerplate, and conclusory allegations, which reflect nothing more than  naked assertions on his part and are devoid of any factual statements that would support a grant of relief. "In determining whether allegations state a plausible claim for relief, the Supreme Court has suggested that we begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Pereira-Castillo, 590 F.3d at 49. (citing Iqbal, 129 S.Ct. at 1950)(internal citations omitted).

More specifically, Defendants posit that Valle's complaint is devoid of any allegation that allows Section 1983 liability to be imposed on Mr. Perez-Valentin. Valle's complaint asserts that Mr. Perez-Valentin is liable because he was elected mayor of Maricao on November 4, 2008 and sworn in on January 10, 2009. The sole additional reference to Mr. Perez-Valentin's role is the statement that Mr. Perez-Valentin was sworn in on January 9, 2009 and a festivity was held in his honor. Valle further suggests that Mr. Perez-Valentin is liable because he failed with deliberate indifference, to prevent the gross and reckless violations of Valle's civil rights, as a result of his failure to establish policies on the review of the use of deadly force by January 10, 2009. Valle avers that Mr. Perez-Valentin's actions caused him to suffer serious bodily injury harm, as well as

pain and suffering in violation of Plaintiff's Constitutional rights
as guaranteed under Section 1983 and the Fourth and Fourteenth
Amendments.

    Plaintiff does not allege that Mr. Perez-Valentin was a primary
violator. In fact, Valle's claim against Mr. Perez-Valentin seems to
state that liability is premised on Mr. Perez-Valentin's failure to
train, monitor, and discipline personnel under his charge. In Iqbal,
the Supreme Court held that Section 1983 plaintiffs "must plead that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution." Id. at 1948, 1949
("[E]ach Government official, his or her title notwithstanding, is
only liable for his or her own misconduct"). The First Circuit, in an
opinion penned by Chief Judge Lynch, noted that the Supreme Court's
language in Iqbal "may call into question our prior circuit law on the
standard for holding a public official liable for damages under § 1983
on a theory of supervisory liability." Maldonado, 568 F.3d at 275 n.7.
However, the First Circuit did not render a final verdict or furnish
any guidance to the district courts on this question because the
appellate court found that the plaintiffs had not pled facts
sufficient to make out a plausible entitlement to relief under the
First Circuit's previous formulation of supervisory liability.

    Notwithstanding the Chief Judge's foreboding, the First Circuit
has continued to employ and develop its previously articulated
standard of supervisory liability under Section 1983.[2] To this
statement of the law, the Court now turns. Conforming to the Supreme
Court's language, the First Circuit has held that "[a]lthough
Government officials may not be held liable for the unconstitutional
conduct of their subordinates under a theory of respondeat superior .
. . supervisory officials may be held liable on the basis of their own

---

[2] The First Circuit has sided with those circuit courts' supervisory liability
standards that, as one noted commentator observed, "only survive Iqbal to the extent
they authorize § 1983 liability against a supervisory official on the basis of the
supervisor's own unconstitutional conduct or, at least, conduct that sets the
unconstitutional wheels in motion." Martin A. Schwartz, Section 1983 Litigation:
Claims and Defenses, §7.19[D] (4th ed. 2010). "The issue, then is one of causation,
i.e., whether the supervisor's conduct was a proximate cause of the violation of the
plaintiff's constitutional rights." Id.; see generally Dodds v. Richardson, No.
09-6157, 2010 WL 3064002 (10th Cir. Aug. 6, 2010) (describing in detail how the
circuit courts have tackled supervisory liability post-Iqbal).

acts or omissions." Pereira-Castillo, 590 F.3d at 49 (internal citations and quotation marks omitted).

In indirect conduct cases, the analysis focuses on whether or not the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent wrongdoing. See id.; Maldonado, 568 F.3d at 275 ("... supervisory liability under a theory of deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.") (internal quotation marks
and citation omitted).

"Under either a direct or indirect theory of liability, the plaintiff must [nevertheless] show that the official had actual or constructive notice of the constitutional violation." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 768 (1s Cir. 2010) (internal quotation marks and citations omitted). "An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps." Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)). In either case, Section 1983 plaintiffs must always show an "affirmative link," whether through direct participation or through conduct that amounts to tacit authorization between the actor and the underlying violation. Pereira-Castillo, 590 F.3d at 49.

The Court turns to Valle's complaint and finds "that it does little more than assert a legal conclusion about the involvement of Mr. Perez-Valentin in the underlying constitutional violation." Pereira-Castillo, 590 F.3d at 49.

As a result of the foregoing, the Court **DISMISSES** Valle's Section 1983 claim against Mr. Perez-Valentin in his personal capacity.

*2. Liability of Mr. Ortiz-Rodriguez*

Defendants also posit that the claims against Mr. Ortiz-Rodriguez, the Maricao Municipal Police Department commissioner at the

time of the events alleged in the complaint, should be dismissed due to an absence of personal involvement or supervisory liability.

At no point in his complaint, does Valle allege that Mr. Ortiz-Rodriguez was personally liable. Moreover, Valle's complaint again fails to provide an affirmative link that amounts to tacit authorization between Mr. Ortiz-Rodriguez and the alleged constitutional violations.

As a result of the foregoing, the Court **DISMISSES** Valle's Section 1983 claim against Mr. Ortiz-Rodriguez in his personal capacity.

### 3. Liability of Mr. Vargas-Caraballo

Defendants also contest the liability of Mr. Vargas-Caraballo. Valle's complaint identifies Mr. Vargas-Caraballo as one of the possible municipal police officers who shot him on the night of January 9, 2009. Valle's complaint clearly alleges that either Mr. Vargas-Caraballo or Mr. Ruiz del Toro opened fire from their municipal police vehicle and shot Valle. In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. This analysis is context-specific. Id. at 1950. Valle successfully pleads in his complaint that Mr. Vargas-Caraballo was liable as a primary violator in the rights-violating incident, thereby stating a sufficient claim for relief. See Pereira Castillo, 590 F.3d at 50 (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44(1st Cir. 1999)).

Therefore, the Court **DENIES** Defendants' motion to dismiss as to Mr. Vargas-Caraballo.

## H. Supplemental Claims

Defendants request that the Court dismiss Plaintiff's supplemental claims because he has failed to allege any cause of action under the federal law.

The Court should also decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed. See Camelio v. American Federation, 137 F.3d 666, 672 (1st

Cir. 1998) ("The balance of factors ordinarily weigh strongly in favor
of declining jurisdiction over state law claims where the foundational
federal claims have been dismissed at an early stage in the
litigation.").

　　　However, the Court has not dismissed all of Valle's federal
claims at this juncture and finds no need to dismiss his supplemental
claims.

　　　As a result of the foregoing, Defendants' motion to dismiss
Valle's supplemental claims under Puerto Rico law is hereby **DENIED**.

## I. Waiver of Right to Sue

　　　In their most recent motion to dismiss, Defendants posit that
Plaintiff has waived his right to bring a civil claim against them
(Docket No. 27). On the other hand, Plaintiff avers that he never
entered into an agreement that would inhibit his right to bring a
civil action (Docket No. 32).

　　　Defendants correctly point out that a cause of action under
Section 1983 may be waived if the defendant enters into such a waiver
knowingly and voluntarily. Town of Newton v. Rumery, 480 U.S. 386,
393(1987). "In our system of criminal justice, most rights can be
waived." United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir.
2003)(referencing United States v. Teeter, 257 F.3d 14, 21 (1st Cir.
2001) (cataloguing examples)). However, "the waiver of virtually any
right closely affecting individual liberty must be knowingly and
voluntarily made." Correa Torres, 326 F.3d at 22 (listing cases
discussing waiver of rights in different contexts).

　　　Defendants correctly point out that the Court should be mindful
of the totality of the circumstances when determining whether a waiver
of rights is indeed valid. Correa-Torres, 326 F.3d at 23.

　　　The Third Circuit held that the absence of a written agreement to
waive a right to sue in exchange for the dismissal of criminal charges
"requires even more scrupulous review by the courts than otherwise.
Livingstone v. North Belle Vernon Borough, 12 F.3d 1205, 1212 (3d Cir.
1993). In Rumery, the Supreme Court concluded that a waiver of a right
to sue pursuant to Section 1983 was voluntary by considering the
totality of the circumstances. 480 U.S. at 394. In said case, the

Supreme Court held that the waiver was voluntary because the party
waiving the right was a sophisticated businessman, was not in jail,
was represented by an experienced attorney that drafted the agreement
and the person waiving his right had the opportunity to consider the
agreement for three days before signing it. "In sum, waivers of
constitutional rights not only must be voluntary, but must also be
knowing, intelligent acts done with sufficient awareness of the
relevant circumstances and likely consequences." Wilkicki v. Brady,
882 F. Supp. 1227, 1232 (1st Cir. 1995) (citing Brady v. United
States, 397 U.S. 742, 748 (1970)) (internal citations and quotations
omitted).

     The distinctions between the waiver in Rumery and the instant
case are pronounced. In fact, this case strikes the Court as being
much closer to Livingstone than Rumery. Defendants' motion includes a
series of exhibits that include: (1) the prosecutor's authorization of
criminal charges against Valle; (2) the criminal complaint brought
against Valle; (3) the resolution from the preliminary hearing brought
against Valle; (4) the resolution from the preliminary hearing on
appeal against Valle; (5) a certification that the preliminary hearing
on appeal courtroom lacks a record; and (6) the minutes from the
proceedings against Jose Daniel Velez Rosado, in an effort to show
that there was in fact a valid waiver agreement in place. Defendants
have also submitted two affidavits from the assistant district
attorneys in charge of the state prosecution against Valle in an
attempt to further evidence that there existed a valid waiver
agreement. However, none of the documents submitted by the defense
illustrate that the waiver in question was knowing, voluntary and
intelligent.[3]

     The Court remains unconvinced that Valle's waiver, if there was
indeed a valid waiver, "reflects a highly rational judgment that the

---

[3] The Court notes the difference in approach employed by several Circuits when
determining the voluntariness of waiver. Most notably, the Third Circuit held that the
voluntariness of an oral release-dismissal agreement must be proven by clear and
convincing evidence. Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 535-36
(3d Cir. 1996). In contrast, the Sixth Circuit and the Seventh Circuit concluded that
voluntariness need only be proven by a preponderance fo the evidence. Gonzalez v.
Kokot, 314 F.3d 311,318 (7th Cir. 2002) (citing Burke v. Johnson, 167 F.3d 276, 285
(6th Cir. 1999)). The Court finds that in the instant case, Defendants fail to
establish that there was a voluntary waiver under either standard.

certain benefits of escaping criminal prosecution exceed[ed] the speculative benefits of prevailing in a civil action." <u>Rumery</u>, 480 U.S. at 394. The instant case presents a vastly different fact pattern than the one in <u>Rumery</u>. In the instant case, Defendants have been unable to show that Valle's waiver was knowing and voluntary. In fact, the lack of a clear on-the-record statement of the rights that Valle was being asked to waive, the lack of any statements that Valle agreed to the waiver and the absence of a clear written agreement that Valle could read or take home to review suggests that the waiver was not knowing and voluntary. The Court concludes that Defendants have not met their burden in order to prove that Valle gave informed and voluntary consent to a waiver of his right to bring suit under Section 1983. <u>See</u> <u>Livingstone</u>, 12 F.3d at 1214.

Therefore, the Court **DENIES** Defendants' motion to dismiss.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions and **DISMISSES** the claims under the Fifth, Thirteenth, and Fourteenth Amendments, as well as the personal claims against Mr. Perez-Valentin and Mr. Ortiz-Rodriguez **WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 22, 2011.


S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE.